FILED
IN CLERKS OFFICE
2004 FEB 25 P 3: 59
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CENTRAL SECTION**

**CIVIL ACTION NO.**

**DAVINCI BIOMEDICAL RESEARCH PRODUCTS, INC.**
**Plaintiff,**

**vs.**

**TOSHIBA AMERICA MEDICAL SYSTEMS, INC.**
**Defendant,**

**COMPLAINT**

**04-40027 NMG**

## THE PARTIES

1. The Plaintiff, DaVinci Biomedical Research Products, Inc. (DaVinci) is a Massachusetts Corporation with a principal place of business at 40 Maple Street, Lancaster, Massachusetts.

2. The Defendant Toshiba America Medical Supplies, Inc. (Toshiba) is a corporation with a principal place of business at 2441 Michelle Drive, Tustin, California.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in the District Court for the Central Section of Massachusetts pursuant to 28 U.S.C. §1332, since both the Plaintiff and the Defendant have places of business in different states, and the amount in controversy exceeds $75,000.

RECEIPT # 404273
AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. S Jones
DATE 2-25-04

4. Venue lies in this district pursuant to 28 U.S.C. §1391(c).

## FACTS COMMON TO ALL COUNTS

5. DaVinci provides biomedical researchers with surgical services, diagnostic testing and patented devices for the study of lab research animals.

6. In March of 2003, DaVinci sought to purchase a Magnetic Resonance Imaging (MRI) machine in order to perform non-invasive studies for biomedical researchers.

7. DaVinci intended that a substantial portion of the MRI diagnostics would involve studies of small blood vessels in hearts.

8. DaVinci contacted several MRI manufacturers, among them Defendant Toshiba, in order to compare features and prices and, ultimately, to purchase an MRI machine suitable to DaVinci's diagnostic needs.

9. Beginning in March of 2003, DaVinci and Toshiba discussed DaVinci's need for an MRI machine. During those communications, DaVinci disclosed to Toshiba that a primary use of the MRI machine would be for the study of small blood vessels in the heart.

10. During those communications, DaVinci also indicated that it needed to purchase and install an MRI machine by May 30, 2003 in order to perform an upcoming biomedical study.

11. DaVinci indicated that it wished to purchase an 1.5T ("Tesla" power) MRI for its studies. However, Toshiba indicated that a .70 T unit, from its "Ultra" line, would be sufficient to produce images of small blood vessels in the heart with sufficient quality to satisfy

DaVinci's requirements.

12. On information and belief, Toshiba was unable to deliver a .70T unit from its "Ultra" line before DaVinci's deadline.

13. On information and belief, Toshiba was also unable to deliver a .70T Ultra unit at a price that was competitive with other MRI vendors from whom DaVinci had received quotes.

14. Toshiba proposed that DaVinci purchase an MRI described as an OPART/U7.

15. DaVinci sought clarification of the power of the OPART/U7, mistakenly believing that this machine had a .7T rating.

16. Toshiba disclosed that the OPART/U7 was, in fact, only a .35T rated MRI machine. However, Toshiba expressly represented that software improvements to this machine gave it the necessary resolution to produce images of small blood vessels that DaVinci would consider satisfactory.

17. Toshiba provided DaVinci with copies of blood vessel images that it represented were created by an OPART/U7 MRI machine. These images were of satisfactory quality to DaVinci.

18. On information and belief, the sample images shown by Toshiba were not taken by an OPART/U7 but were taken by a more powerful MRI machine.

19. On or about May 6, 2003, Toshiba proposed that DaVinci purchase a particular OPART/U7 that Toshiba described as an "engineering" unit. Toshiba explained that this unit had very low hours, so it was not technically new. However, the unit had never been "titled".

19. On or about May 19, 2003, Toshiba provided DaVinci with a written quotation for the

engineering unit, a true and accurate copy of which is attached at Exhibit 2, hereto. The quotation referred to the machine as a "Refurbished OPART System". Toshiba representatives assured DaVinci that the term "refurbished" merely indicated that the unit was not brand new.

20. On or about May 19, 2003, relying upon Toshiba's representations concerning both the capabilities of the OPART/U7, and the machine's condition and prior use, DaVinci accepted Toshiba's proposal and agreed to purchase the machine for the sum of Five-Hundred Thousand ($500,000) Dollars, half of which DaVinci has paid to Toshiba.

20. After entering into the agreement with Toshiba, DaVinci incurred great expense in building a room in its facility that was suitable for the placement of the MRI unit. Expenses included special shielding that would prevent any interference with the machine's images. Interference included radio interference.

21. Despite the parties' agreement that the MRI machine be installed before May 30, 2003, it was actually installed during the months of June and July, 2001, causing DaVinci to postpone testing that was scheduled.

22. The MRI machine was first utilized by DaVinci in studies involving pulmonary veins. Initially, the study could not be conducted at all because the MRI machine was not equipped with an agreed upon "Gating System". This option essentially allowed the MRI machine to time its imaging with the beating of the heart, and the movement of blood through the vessels, so that an image could be made at a "still" point in the cycle.

23. After the Gating System was installed by Toshiba, its operation was faulty. This resulted in more delay as Toshiba personnel had to troubleshoot the system.

24. The system finally came online in the latter part of July of 2003. However, DaVinci immediately began to experience breakdowns and component failures. Though these components and breakdowns were under Toshiba's warranty, DaVinci came to discover that the parts being replaced were several years old and in poor condition.

25. Contrary to Toshiba's pre-sale representation, this "engineering unit", in fact, had previously had many hours of use. On information and belief, the actual condition of the machine, and that of its components, is such that the machine will likely break down more often and will not have a life-span equivalent to a machine with "only a few hours".

26. In fact, the MRI machine repeatedly broke down, causing significant delays in DaVinci's ability to complete work for clients.

27. In the Summer of 2003, DaVinci performed imaging on small blood vessels using the OPART/U7. DaVinci discovered that those images were of such poor quality that they could not be used in the pending study. When compared to the sample images given to DaVinci by Toshiba, DaVinci's images were clearly inferior.

28. DaVinci notified Toshiba that it was unable to produce satisfactory images of small diameter cardiovascular blood vessels. Toshiba blamed the problem on RF interference at the DaVinci site and stated that DaVinci must resolve that problem before Toshiba would consider any other solution.

29. At great cost and in due diligence, DaVinci attempted to isolate any RF interference near the MRI machine. It found nothing outside the tolerances indicated by Toshiba.

30. Though DaVinci was unable to correct the poor image quality, Toshiba still refused to attribute the problem to an inadequate or defective MRI machine.

31. In December of 2003, DaVinci specifically requested an opportunity to view a similar Toshiba OPART creating images of small blood vessels, with a quality that was on par with the images shown to DaVinci by Toshiba before the sale.

32. Toshiba agreed to allow DaVinci representatives to visit a site containing another OPART MRI for the purposes requested by DaVinci. Toshiba arranged for DaVinci representatives to visit a site in Albany, New York.

33. In early 2004, at great time and expense, DaVinci representatives visit the site designated by Toshiba where an OPART MRI machine's ability to create satisfactory images of small blood vessels could be demonstrated.

34. Upon arriving at the site, DaVinci representatives concluded that the OPART unit could not produce images that equaled or exceeded the quality of Toshiba's represented images.

**COUNT I-BREACH OF CONTRACT**

35. Plaintiff realleges and incorporates paragraphs 1 through 34 herein.

36. Defendant Toshiba has breached its contract with DaVinci for which DaVinci is entitled to damages according to its proof at trial.

**COUNT II-GOOD FAITH AND FAIR DEALING**

37. Plaintiff realleges and incorporates paragraphs 1-34 herein.

38. Defendant Toshiba has breached the covenant of good faith and fair dealing that is implied in all Massachusetts contracts, for which DaVinci is entitled to recover damages according to its proof at trial.

**COUNT III-BREACH OF WARRANTY**

39. Plaintiff realleges and incorporates paragraphs 1-34 herein.

40. Defendant Toshiba has breached the express and implied warranties concerning the quality of the images could be produced by the OPART/U7 and concerning the physical condition and age of the machine itself.

41. Plaintiff has repeatedly given Toshiba prompt notice of the defects. However, Toshiba has failed to correct those defects.

42. DaVinci has suffered damages according to its proof at trial.

**COUNT IV-CHAPTER 93A, SECTIONS 2 AND 11**

43. Plaintiff realleges and incorporates paragraph 1-42 herein.

44. Both DaVinci and Toshiba are "person[s]" engaged in "trade or commerce" within the meaning of M.G.L. Chapter 93A.

45. Toshiba negligently or intentionally misrepresented the capabilities of the OPART/U7, negligently or intentionally provided DaVinci with false or misleading exemplars of the image quality that DaVinci would achieve with the OPART/U7, and negligently or intentionally misrepresented the actual age and wear of the OPART/U7 machine in order to induce DaVinci to purchase the machine.

46. After the sale, Toshiba continued to actively conceal from DaVinci the defects and inadequacies of the OPART/U7 that render the MRI machine wholly unsuitable for DaVinci's requirements.

47. Toshiba's actions constitute unfair or deceptive trade practices declared unlawful by the

Legislature of the Commonwealth of Massachusetts at M.G.L. Chapter 93A, Sections 2 and 11, and were done willfully or recklessly.

48. Toshiba's unfair and deceptive acts and practices have caused DaVinci to suffer damages according to its proof at trial.

**WHEREFORE**, Plaintiff DaVinci Biomedical Research, Inc. Requests that this Honorable Court grant the following relief:

A) As to Counts I, order rescission of the contract between the parties;

B) As alternative to the requested rescission of the Contract, award damages according to Plaintiff's proof at trial, together with interest, costs and attorney's fees;

C) As to Counts II and III, award damages according to Plaintiff's proof at trial, together with interest, costs and attorney's fees;

D) As to Count IV, award the Plaintiff damages according to its proof at trial, which damages should be multiplied, and award interest, costs and attorney's fees; and

E) Grant such other and further relief as this Court deems appropriate.

**PLAINTIFF REQUESTS A JURY TRIAL**

Respectfully Submitted:

Allegro MicroSystems, Inc.
By its attorney

Roy A. Bourgeois, BBO# 051020
Robert S. White, BBO# 552229
Bourgeois, Dresser, White & Beard
4 Dix Street
Worcester, MA 01453
(508) 798-8801

Dated: February 25, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Davinci Biomedical Research Products, Inc. v. Toshiba America Medical Systems, Inc.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

X III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

YES ☐ NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

YES ☐ NO ☒

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES ☐ NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

YES ☐ NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

YES ☐ NO ☒

A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☐ WESTERN DIVISION ☐

B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☒ WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Roy A. Bourgeois, Esquire

ADDRESS Bourgeois, Dresser, White & Beard, 4 Dix Street, Worcester, MA 01609

TELEPHONE NO. 508-798-8801

(Cover sheet local.wpd - 11/27/00)

JS 44
(Rev. 07/86)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

Davinci Biomedical Research Products, Inc.

## DEFENDANTS

Toshiba America Medical Systems, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roy A. Bourgeois, Esquire BBO#051020
Robert S. White, Esquire BBO#552229
Bourgeois, Dresser, White & Beard
4 Dix Street, Worcester, MA 01609
508-798-8801

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 **U.S. Government Plaintiff**
☐ 3 **Federal Question** (U.S. Government Not a Party)
☐ 2 **U.S. Government Defendant**
XX 4 **Diversity** (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Defendant misrepresented the capability of an MRI unit that it sold to Plaintiff. The unit's capacity is insufficient to perform the functions required by the Plaintiff.

## V. NATURE OF SUIT *(PLACE AN × IN ONE BOX ONLY)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med Malpractice
- ☐ 365 Personal Injury—Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Food & Drug
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. ORIGIN *(PLACE AN × IN ONE BOX ONLY)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND** $750,000

*Check YES only if demanded in complaint:*
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

N/A

JUDGE ______ DOCKET NUMBER ______

DATE 2/25/04

SIGNATURE OF ATTORNEY OF RECORD [signature]

UNITED STATES DISTRICT COURT